JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Joseph Coles ("Coles"), appeals his convictions and sentences. Finding some merit to the appeal, we affirm in part and reverse in part.
 {¶ 2} In 2006, Coles was charged in a 242-count indictment with rape, kidnapping, gross sexual imposition ("GSI"), and child endangering in connection with the molestation of his stepdaughter, "S.D." The first 111 counts involved a time frame of January 8, 1998 through January 7, 2001, when S.D. was under the age of thirteen, and charged Coles with 37 counts of kidnapping with sexual motivation specifications, 37 counts of rape of a child under thirteen years of age, and 37 counts of GSI of a child under the age of thirteen. The remaining counts specified a range between January 8, 2001 through January 5, 2004. As to that time, Coles was charged with 43 counts of kidnapping with sexual motivation specifications, 43 counts of rape, 43 counts of GSI, and two counts of child endangering. Coles' codefendant was S.D.'s mother, Dawn Coles ("Dawn"), who later pled guilty to endangering children and obstructing justice and was sentenced to three years in prison.
 {¶ 3} In June 2006, defense counsel moved for a more specific bill of particulars. The trial court did not rule on the motion, and the State never provided counsel with an amended bill of particulars. The matter proceeded to a jury trial. Dawn pled guilty on the day of trial and agreed to testify against Coles. The State presented several witnesses, including S.D., Dawn, social workers, medical *Page 3 
personnel, and two detectives. At the close of the State's case, the State moved to amend the indictments to reflect numerous date changes and dismiss 40 counts of kidnapping. The defense also called several witnesses to testify, including Coles.
 {¶ 4} The following evidence was adduced at trial.
 {¶ 5} S.D. was born on January 8, 1988. When she was six years old, her mother began dating Coles. S.D. testified that Coles lived with her and her mom in Lakewood and, in April 1998, Dawn gave birth to a son. S.D. testified that she was ten years old when Coles began to molest her. She and Coles were watching television when he touched her vagina. She went to bed and awoke to him touching her vagina. She told him to go away and he did. S.D. testified that the same scenario occurred "every once in awhile" thereafter. S.D. testified that she told her mother about the incident a week after it occurred. Dawn called social services, which developed a safety plan and "closed" the case. S.D. went to live with her grandparents for the rest of the summer. When she returned to the house, S.D. testified that she felt safe because her mother never left her alone with Coles.
 {¶ 6} S.D. remembered that the abuse recommenced in the summer of her sixth-grade year, or 2000, when she, her mother, and her younger brother moved to West 114th Street in Cleveland. S.D. testified that while her mother was at work, Coles would have sex with S.D. in his bedroom or in the living room. She testified that she could not remember details, only "him sticking the head of his penis into my vagina and saying not to worry about it, because I won't get pregnant." But S.D. did *Page 4 
get pregnant, and had an abortion when she was twelve years old. She told everyone that someone at school had impregnated her, but it was really Coles. She stated that she had lied because nobody believed her when she reported the abuse the first time.
 {¶ 7} In June 2001, the family moved back to Lakewood, where the abuse started again at the end of the summer. S.D. testified that Coles would wake her up at night and make her have sex with him. She described how Coles would either lay on top of her or force her to get on top of him and have vaginal intercourse with her. She stated that it happened often, probably twice a week.
 {¶ 8} In June 2002, the family moved to Parma, and Coles lived with them. She testified that Coles forced her to have sex with him in the basement, his bedroom, or her bedroom while her mother was at work and during the night. She testified that the abuse happened almost every day. S.D. further testified that Coles convinced her mother to put S.D. on birth control pills. Dawn married Coles in April 2003.
 {¶ 9} S.D. learned she was pregnant again in March 2004. She told her mother that she had become pregnant by a boy at school, even though it was Coles who had impregnated her. S.D. testified that she had another abortion, even though she did not want to. She testified that a week after the April 2, 2004 abortion, Coles told her that she should be healed and forced her to have sex with him again and *Page 5 
that the sex occurred a couple times a week thereafter until the family moved to Iowa in July 2004.
 {¶ 10} After the family moved to Iowa, the abuse continued. In June 2005, S.D. finally told her mother about Coles' "raping" her and that the pregnancies were the result of his abuse. S.D. moved back to Cleveland to live with relatives and Dawn reported the abuse to Iowa police. Dawn testified that Coles called her shortly after S.D. returned to Ohio and admitted that he and S.D. were "lovers." Dawn further testified that Coles stated during the same conversation that it was he who wanted to break off his relationship with S.D. now that he was married to Dawn.
 {¶ 11} S.D. testified that after she went to live with relatives in Cleveland, she did not get along with them and wanted to live with Coles' mother. She testified that Coles' mother would not allow her to move in until she signed a document admitting that she had fabricated the allegations against Coles. S.D. refused, but after a bad night staying in a "crack house," S.D. called Coles' mother and said she would recant her allegations. S.D. composed a short statement recanting her allegations, which was admitted into evidence.
 {¶ 12} Coles called various family members to the stand, all of whom testified that they knew S.D. well and described her relationship with Coles as "normal." Coles' mother testified that S.D. was manipulative, and she denied pressuring S.D. to recant her allegations. Coles testified that he never raped S.D., got her pregnant, or confessed to Dawn that he and S.D. were "lovers." *Page 6 
 {¶ 13} The jury convicted Coles of 43 counts each of rape and GSI. The convictions related to the time period when S.D. was over the age of thirteen. The jury acquitted Coles of the rape, kidnapping, and GSI counts that related to the time period when S.D. was under the age of thirteen, and also acquitted him of the remaining kidnapping and child endangering charges. The trial court classified Coles as a sexual predator and sentenced him to a total of 210 years in prison. The court sentenced him to consecutive sentences of five years in prison on each of the 42 counts of rape and consecutive sentences of six months for each GSI, to run concurrent to the sentences for rape. The journal entries reflected that the court overlooked the jury's acquittal on one count and failed to impose sentence on the forty-third rape count. Coles filed a notice of appeal, which we dismissed for lack of a final appealable order based on the incomplete journal entry. Coles was resentenced, with the five-year sentence imposed for the missing rape count to run concurrent with the rest of his sentence, for a total of 210 years in prison.
 {¶ 14} Coles again appeals his convictions and sentences, and raises eight assignments of error for our review. These assignments of error will be discussed out of order when necessary to dispose of certain issues.
 Sufficiency of the Evidence — Gross Sexual Imposition {¶ 15} In the fourth and fifth assignments of error, Coles argues that his convictions for gross sexual imposition were not supported by sufficient evidence.[1] *Page 7 
 {¶ 16} The standard of review for the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus, which states:
 "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 17} See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394; State v. Davis (1988), 49 Ohio App.3d 109, 113,550 N.E.2d 966.
 {¶ 18} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541 and State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. Thompkins at 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light *Page 8 
most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks at paragraph two of the syllabus.
 {¶ 19} Coles was convicted of 43 counts of GSI, a violation of R.C. 2907.05(A)(1), which provides that "no person shall have sexual contact with another, not the spouse of the offender * * * when * * * the offender purposely compels the other person * * * to submit by force or threat of force."
 {¶ 20} "Sexual contact," is defined by R.C. 2907.01(B) as:
 {¶ 21} "Any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 22} Coles argues that S.D. did not testify regarding a single act of GSI that occurred when she was over the age of thirteen. The State responds that the acts of rape which S.D. described inherently include the touching of an erogenous zone, or GSI.
 {¶ 23} We have specifically rejected the argument that implicit in every rape is an act of gross sexual imposition. Gross sexual imposition is a lesser included offense of rape. State v. Johnson (1988),36 Ohio St.3d 224, 226, 522 N.E.2d 1082; State v. Jones (1996),114 Ohio App.3d 306, 325, 683 N.E.2d 87. Accordingly, under R.C. 2941.25, a defendant may generally not be convicted of and sentenced for both GSI and rape when they arise out of the same conduct. Id.; see, also, State *Page 9 v. Reid, Cuyahoga App. No. 83206, 2004-Ohio-2018. Although there may be instances when a defendant may be convicted and sentenced for both charges, that occurs when such contact is separate from the conduct that constituted the rape offense. See State v. Knight, Cuyahoga App. No. 89534, 2008-Ohio-579 (holding the trial court properly found that the defendant committed gross sexual imposition when he groped the victim's breast and that this was done with a separate animus from the sexual contact that led to the conviction for rape.)
 {¶ 24} In the instant case, S.D. testified that Coles first abused her when she was ten years old, and he forced her to touch his penis and he touched her vagina. But Coles was acquitted of all charges related to events that the State alleged occurred before S.D. reached thirteen years of age. As to the abuse that occurred after she turned thirteen, S.D. did not testify about a single instance of gross sexual imposition. Her entire testimony surrounding her molestation described acts of sexual conduct, i.e. rape, not merely sexual contact. Therefore, we agree with Coles that there was insufficient evidence to support his convictions for gross sexual imposition. Thus, his 43 convictions for gross sexual imposition are vacated.
 {¶ 25} The fourth and fifth assignments of error are sustained.
 Identical Indictments {¶ 26} In the first assignment of error, Coles argues that he was denied his due process rights by the identical and undifferentiated indictments with which the State *Page 10 
charged him. Since we have vacated his convictions for GSI, we will only consider the indictments for rape.
 {¶ 27} In Russell v. United States (1962), 369 U.S. 749, 763-764,82 S.Ct. 1038, 8 L.Ed.2d 240, the United States Supreme Court set out two criteria by which the sufficiency of an indictment is to be determined: first, that an indictment sufficiently apprises a defendant of the criminal charges against him; and second, that the indictment provides adequate specificity that he may plead acquittal or conviction as a defense against any future indictment for the same conduct.
 {¶ 28} Coles relies upon the Sixth Circuit Court of Appeals decision in Valentine v. Konteh (C.A.6, 2005), 395 F.3d 626, in support of his assertion that the indictments in this case failed to provide him fair notice because they did not connect each count to a distinct and differentiated incident. We disagree.
 {¶ 29} The Valentine decision held that due process is violated when a defendant is indicted in a multiple-count sexual abuse indictment when there is no factual basis or distinction between the counts. Id. at 633.Valentine involved an indictment alleging 20 counts of child rape and 20 counts of felonious sexual penetration occurring over an eleven-month period. The offenses were identically alleged and no further information was included to differentiate one count from another. TheValentine court stated:
 {¶ 30} "In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. *Page 11 
Instead, the 8-year-old victim described `typical' abusive behavior by Valentine and then testified that the `typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented." Id. at 632-633.
 {¶ 31} The court noted that, "[w]hen prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy. * * * Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts." Notably, the Valentine court did not rule out multiple-count indictments, finding instead that, "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial." Id. at 634.
 {¶ 32} In State v. Bogan, Cuyahoga App. No. 84468, 2005-Ohio-3412, we noted that:
 "Specificity as to the time and date of an offense is not required in an indictment. State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632. Under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged. Id. at ¶ 17-18." *Page 12 
 {¶ 33} Moreover, "where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, ¶ 17; see, also, State v. Gus, Cuyahoga App. No. 85591, 2005-Ohio-6717. This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. Gus at ¶ 6. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. State v. Mundy
(1994), 99 Ohio App.3d 275, 296, 650 N.E.2d 502; see State v.Robinette (Feb. 27, 1987), Morrow App. No. CA-652. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." Robinette. Thus, "[a]n allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." Id.
 {¶ 34} We acknowledge that an exception to this general rule exists when the failure to allege a specific date "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified."Yaacov at ¶ 18, quoting State v. Morgan (May 11, 2001), Lucas App. No. L-00-1114.
 {¶ 35} Although the decision in Valentine is not binding on this court, we have cited the Valentine decision on a number of occasions. InState v. Warren, *Page 13 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998, the defendant was charged in a 48-count indictment charging him with twelve identical counts of rape of a child under the age of thirteen, GSI, kidnapping, and felonious sexual penetration. In State v. Hemphill, Cuyahoga App. No. 85431,2005-Ohio-3726, the defendant was charged with 33 counts of rape, 33 counts of kidnapping, and 33 counts of GSI. In State v. Hilton, Cuyahoga App. No. 89220, 2008-Ohio-3010, the defendant was convicted of thirteen counts of rape, thirteen counts of GSI, and thirteen counts of kidnapping. In these cases, this court cited Valentine with approval and affirmed some of the convictions and reversed others, finding reversal was warranted where the victims only estimated the number of times the abuse occurred and the indictments failed to connect the defendant to "individual, distinguishable incidents." For example, inHilton, we found that the State's use of a numerical estimation to support a multi-count indictment raised precisely the sort of due process violation addressed in Valentine. But we also noted that, unlike the victims in Valentine or Hemphill, the victim was able to recall details of specific incidents of sexual abuse by appellant and differentiate these incidents by the location where each occurred. Id. We found sufficient factual bases to differentiate between five counts of rape, five counts of GSI, and ten counts of kidnapping and affirmed the convictions on those counts. Id.
 {¶ 36} In State v. Ford, Cuyahoga App. No. 88236, 2007-Ohio-2645, this court affirmed the convictions from multi-count indictments, finding there was no due *Page 14 
process violation because the defendant denied any sexual contact whatsoever with the victims; thus, the lack of specificity in the indictments as to specific dates or places of the alleged abuse did not result in prejudice to the defendant's defense. Additionally, inState v. Russell, Cuyahoga App. No. 88008, 2007-Ohio-2108, and State v.Rice, Cuyahoga App. No. 82547, 2005-Ohio-3393, this court rejected challenges based on Valentine where the testimony elicited from the child-victims provided sufficient differentiation among the counts.
 {¶ 37} In Yaacov, (discretionary appeal not allowed,112 Ohio St.3d 1494, 2007-Ohio-724, 862 N.E.2d 119), the defendant was charged with 42 counts of rape, 40 counts of GSI, 42 counts of sexual battery, and one count of tampering with evidence. He was convicted of all but one count of rape and one count of sexual battery. We distinguishedValentine and found sufficient differentiation among the counts based on the victim's ability to recall when, where, and how the abuse occurred. Although the victim in Yaacov was not able to give specific dates, she was able to put each incident in a time frame by detailing where it happened, which house they were living in, and where she and the defendant worked when the abuse occurred. Id. We also found that, unlikeValentine and Hemphill, other evidence was presented to substantiate the victim's claims. In Yaacov, unlike Valentine, the State did not merely estimate, nor have the victim estimate, how many times she was molested. We noted that the bill of particulars identified the victim, her date of birth, and the places where the crimes occurred, and therefore we concluded that *Page 15 
the victim's testimony provided discernible facts to substantiate the separate charges. Id.
 {¶ 38} After a careful review of the record in this case and an analysis of this court's prior decisions citing Valentine, we find that there was sufficient evidence in S.D.'s testimony and other evidence presented at trial that provided discernible facts to substantiate the separate charges.
 {¶ 39} S.D. was able to recall when, where, and how the abuse occurred. She testified that the abuse started again in the summer of 2001 when the family was living on Clifton Avenue in Lakewood. She testified that it was the summer between her seventh and eighth grade. Although she did not remember how it started, she remembered the abuse occurred in the living room or her mother's room. She was able to fully describe the house the family was living in and testified that Coles would wake her up at night when he was drunk and her mother was asleep. She testified that Coles would tell her to come into his room or would wake her up in the middle of the night and tell her to take her clothes off and he would either have his boxer shorts on or he would be naked and he would tell her to have sex with him. She described that he would either get on top of her or make her get on top of him and put his penis in her vagina. She also stated that Coles threatened her and told her that he would hurt her, kill her, break her neck, or hurt her mom if she told anyone about the abuse. S.D. testified that the abuse happened "probably twice a week" for the year that she was living in Lakewood. *Page 16 
 {¶ 40} In June of 2002, when the family moved to Parma with Coles, S.D. testified that the abuse intensified so that she and Coles were having sex "almost every day" and that the abuse would occur in the finished basement, in Coles' bedroom, or in her bedroom. She stated that he made her have sex with him just like he did in Lakewood and that the abuse usually occurred while her mother was at work or at night. Then S.D. became pregnant again in 2004 and Coles threatened her and told her to "blame it on one of [her] guy friends." S.D. had an abortion on April 2, 2004, and remembered the date because it was also her little brother's birthday. S.D. testified that Coles made her start having sex with him one week after the abortion, telling her that she should be healed from the abortion. She then testified that Coles made her have sex "a couple times a week" between April 2 and July 5, 2004, when the family moved to Iowa.
 {¶ 41} Although, at one point during the trial, the State asked S.D. to estimate how many times Coles had molested her, we note that the estimation she gave was only for those crimes for which the jury acquitted Coles. In other words, S.D. "guessed" how many times Coles had molested her between the ages of ten and thirteen, but the jury acquitted him of those charges.
 {¶ 42} Thus, S.D. was able to put each incident in a time frame by detailing where it happened and which house she was living in. She was also able to place certain offenses within a particular time frame by tying the offenses to her grade in school. See State v. Crosky, Franklin App. No. 06AP-655, 2008-Ohio-145; State v. *Page 17 Lawwill, Cuyahoga App. No. 88251, 2007-Ohio-2627. And, likeYaacov, but unlike the situations in Valentine and Hemphill, other evidence was presented to substantiate S.D.'s claims. Dawn Coles testified that Coles admitted to her that he and her daughter were "lovers." The medical records substantiated that S.D. had an abortion in April 2004. And the State was able to show that the frequency of rape increased when Dawn was pregnant.
 {¶ 43} In this case, the State attempted to set forth the factual basis for each incident of molestation that occurred over a three and one-half-year period. The allegation was that Coles molested his stepdaughter repeatedly for over three years. The bill of particulars identified the victim, her date of birth, and the places the crimes occurred. The trial court instructed the jurors that each of the charges constitutes a distinct and separate offense, and that they must consider each count separately. State v. Brady, Cuyahoga App. No. 87854,2007-Ohio-1453.
 {¶ 44} We also find that the failure to allege specific dates did not prejudice Coles' ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with S.D., regardless of the date or place she alleged the abuse took place. SeeYaacov; State v. Bennett, Brown App. No. CA2004-09-028, 2005-Ohio-5898, ¶ 33
(remanded by In re Ohio Crim. Sentencing Statutes Cases,109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174); State v. Carnes, Brown App. No. CA2005-01-001, 2006-Ohio-2134; State v. Barnecut (1988),44 Ohio App.3d 149, 152, 542 N.E.2d 353. *Page 18 
 {¶ 45} Thus, we conclude the indictment was properly filed and alleged sufficient facts to apprise Coles of the charges against him.
 {¶ 46} Coles also argues that the evidence is insufficient to support his convictions for rape. The statute governing rape, R.C. 2907.02(A)(2), provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." We find that viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.
 {¶ 47} Therefore, the first assignment of error is overruled.
 Other Acts Evidence {¶ 48} In the second assignment of error, Coles argues that he was denied his right to a fair and impartial jury by the State's introduction of prejudicial other acts evidence. Coles complains that the State improperly introduced evidence of domestic violence, acts of sexual abuse that occurred in Iowa, and of Coles' improper supervision of his son.
 {¶ 49} The trial court has broad discretion in the admission of evidence and, unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere. State v. Cooper, Cuyahoga App. No. 86437,2006-Ohio-817, citing State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126. Moreover, in cases like this one where trial counsel fails to object to the admission of certain evidence or testimony, the objection is *Page 19 
waived unless there is plain error in the admission. State v.Tibbs, Cuyahoga App. No. 89723, 2008-Ohio-1258. "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). Plain error exists when it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; State v. Nicholas (1993),66 Ohio St.3d 431, 613 N.E.2d 225; State v. Watson (1991), 61 Ohio St.3d 1,572 N.E.2d 97; State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894. We invoke the plain error rule only if we find that the circumstances in the instant case are exceptional, and that reversal of the judgment is necessary to prevent a manifest miscarriage of justice.State v. Landrum (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.
 {¶ 50} Coles claims the trial court erred by admitting evidence in violation of Evid. R. 401, 402, and 404. As a basic principle, all relevant evidence is admissible, unless the probative value of that evidence is substantially outweighed by its prejudicial effect. Evid. R. 403. "Relevant" evidence is defined as evidence having any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. See Evid. R. 401. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of *Page 20 
will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122,614 N.E.2d 748.
 {¶ 51} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 52} The admissibility of "other-acts" evidence is further limited in prosecutions for sexual offenses. State v. Decker (1993),88 Ohio App.3d 544, 548, 624 N.E.2d 350. The rape statute includes subsections that limit the admissibility of evidence of other sexual activity by the defendant. R.C. 2907.02(D) provides:
 "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 53} R.C. 2945.59 provides:
 {¶ 54} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's *Page 21 
scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 55} The admission of evidence of uncharged criminal conduct is carefully limited because of the substantial danger that a jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crimes charged in the indictment. SeeState v. Schaim, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661. However, in the instant case, the witnesses' testimony was properly admitted since it tended to show Coles'"scheme, plan or system" of sexual abuse. S.D. testified that Coles threatened her with physical violence and those threats were used to accomplish the rapes. We find that the evidence introduced about Coles committing domestic violence against S.D. and her mother was permissible to show that his threats were substantive. S.D. did not disclose the abuse for several years. Thus, the evidence that Coles' threats were substantive in nature was admissible to show why S.D. did not initially disclose the abuse. Similarly, the evidence of continuing abuse in Iowa was properly admitted as it was evidence of Coles' system of abuse.
 {¶ 56} Coles further complains that it was improper to admit testimony from a social worker who visited the house to investigate a report that Coles had failed to properly supervise his young son, who was found alone at a gas station. A *Page 22 
reasonable explanation for the social worker's testimony was to show why she visited the home and that, when she visited, S.D. did not appear pregnant nor did S.D. disclose any abuse. We further note that Coles was acquitted of all charges relating to the abuse that the State alleged occurred during the period when the social worker visited the house.
 {¶ 57} We find that the potential inflammatory or prejudicial nature of the witnesses' testimony is not sufficient to outweigh its probative value. Moreover, even without this testimony of which Coles now complains, the State provided substantial evidence of appellant's guilt on the offenses charged. See Hilton.
 {¶ 58} Therefore, the second assignment of error is overruled.
 Victim Impact Evidence {¶ 59} In the third assignment of error, Coles argues that he was denied his right to a fair and impartial jury by the State's introduction of victim impact evidence. Again, we review for plain error, as defense counsel did not object to the victim's statements about how the 2004 abortion affected her.
 {¶ 60} Victim impact evidence is excluded at trial because it is irrelevant and immaterial to the guilt or innocence of the accused — it mainly serves to inflame the passion of the jury. See State v.White (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65. Nevertheless, the State is not wholly precluded from eliciting testimony from victims that touches on the impact the crime had on the victims because "circumstances of the victims are relevant to the crime as a whole. The victims *Page 23 
cannot be separated from the crime." State v. Eads, Cuyahoga App. No. 87636, 2007-Ohio-539, citing State v. Williams, 99 Ohio St.3d 439,2003-Ohio-4164, 793 N.E.2d 446. We find this especially true in this case, where S.D. was continually molested for many years and underwent two abortions. The impact testimony S.D. gave was extremely brief and was in response to a question which the State asked regarding the forms she had to fill out at the abortion clinic. A review of the record does not convince us that S.D.'s testimony regarding how she felt about having an abortion was sufficiently inflammatory or prejudicial to warrant reversal.
 {¶ 61} Therefore, the third assignment of error is overruled.
 Prosecutorial Misconduct {¶ 62} In the sixth assignment of error, Coles argues that he was denied his right to a fair trial by repeated prosecutorial misconduct. Coles complains that the State vouched for S.D.'s testimony and improperly attacked Coles' character. We first will consider the improper statements that Coles alleges were made during closing arguments.
 {¶ 63} The test for prosecutorial misconduct in closing argument is "`whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" State v.Hessler, 90 Ohio St.3d 108, 125, 2000-Ohio-30, 734 N.E.2d 1237, quotingState v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. A new trial will be ordered where the outcome of the trial would clearly have been different but for the alleged misconduct. State v. Brewer (June 22, 1995), *Page 24 
Cuyahoga App. No. 67782. When applying this test, we consider "the effect the misconduct had on the jury in the context of the entire trial." State v. Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203.
 {¶ 64} Generally, the State is given a great deal of latitude during closing argument. See State v. Bies, 74 Ohio St.3d 320, 326,1996-Ohio-276, 658 N.E.2d 754. Prosecutors are given latitude to argue what the evidence has shown and what inferences can reasonably be drawn from the evidence. State v. Smith, 80 Ohio St.3d 89, 111, 1997-Ohio-355,684 N.E.2d 668.
 {¶ 65} Coles argues that when the prosecutor told the jury, "I can't imagine a victim or witness in any case that would be more credible or believable than [S.D.] was in this case" and "[S.D.] did not waiver from what she said before. She told the truth. You could see the demeanor * * *" unfairly prejudiced him because the State was vouching for S.D.'s truthfulness. Coles also complains that the prosecutor attacked his credibility by calling him an abuser.
 {¶ 66} The State is permitted to comment on the testimony of witnesses and the evidence, and may suggest a logical conclusion that can be drawn therefrom. State v. Thompson (1993), 87 Ohio App.3d 570, 582,622 N.E.2d 735. The prosecutor may comment on the testimony of the witnesses, including the defendant, and suggest the conclusions to be drawn therefrom. State v. Draughn (1992), 76 Ohio App.3d 664, 670,602 N.E.2d 790. Even though the prosecutor improperly expressed his personal opinion during closing argument, he was arguably *Page 25 
commenting on what the evidence showed. The prosecutor was not averring to his personal knowledge, but he was using the statements to enforce what the evidence and testimony revealed. See State v. Williams, Cuyahoga App. No. 87320, 2006-Ohio-4768. And, in this case, the court cautioned the prosecutor and told the jury to disregard the prosecutor's statements.
 {¶ 67} Coles also complains that the prosecutor engaged in improper confrontation during cross-examination. Coles claims that it was improper for the prosecutor to ask him, "If [S.D.] testified you suggested she be on the pill while she was having sex with you, she wouldn't be right?" and to ask him if his mother lied when a portion of his testimony differed from his mother's. Upon review of the record as a whole, we do not find that these two questions were so improper as to prejudice Coles.
 {¶ 68} We also find that the overwhelming evidence of guilt renders this alleged error harmless. The trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments were not evidence. We presume that the jury followed the court's instructions. State v. Loza, 71 Ohio St.3d 61, 79,1994-Ohio-409, 641 N.E.2d 1082.
 {¶ 69} Therefore, we find that the prosecutor's statements during cross-examination and closing argument did not prejudice Coles and deny him a fair trial. We cannot say, and Coles has not demonstrated, that absent the prosecutor's statements, the outcome of the trial would have been different. *Page 26 
 {¶ 70} Therefore, the sixth assignment of error is overruled.
 Ineffective Assistance of Trial Counsel {¶ 71} In the seventh assignment of error, Coles argues that he was denied his right to effective assistance of trial counsel.
 {¶ 72} In order to establish a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. This requires showing: (1) that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment; and (2) that the deficient performance prejudiced the defense.
 {¶ 73} Coles asserts that his trial counsel was ineffective in connection with various rulings which we have addressed herein and rejected. As we have rejected each of those errors, no error has been shown and the claim of ineffective assistance must fail. See State v.Henderson (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 74} This assignment of error is therefore overruled.
 Ex Post Facto {¶ 75} In the eighth assignment of error, Coles argues that he was denied his liberty without due process in violation of the Ex Post Facto and Due Process *Page 27 
Clauses of the United States Constitution by the imposition of consecutive sentences.
 {¶ 76} We have previously rejected the argument that a defendant's due process rights are violated with an ex post facto application ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. SeeState v. Mallette, Cuyahoga App. No. 87894, 2007-Ohio-715, discretionary appeal not allowed, 115 Ohio St.3d 1439, 2007-Ohio-5567, 875 N.E.2d 101.
 {¶ 77} Therefore, the eighth assignment of error is overruled.
 {¶ 78} Accordingly, judgment is affirmed in part as to the rape convictions and sentences but reversed as to the GSI convictions and sentences. Case remanded for correction of the sentencing entry to vacate the GSI convictions and sentences.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 28 
ANTHONY O. CALABRESE, JR., J., and KENNETH A. ROCCO, J., CONCUR
[1] Within this assignment of error, Coles also argues that his convictions for rape were not supported by sufficient evidence. The convictions for rape will be discussed under the first assignment of error. *Page 1