[Cite as *State v. West*, 2012-Ohio-3151.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95331**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TERRELL WEST

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-484530

**BEFORE:** Cooney, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 12, 2012

**ATTORNEY FOR APPELLANT**

Tyresha Brown-O'Neal
Brown-O'Neal Law
420 Lakeside Place
323 Lakeside Avenue, West
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Ronni Ducoff
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

{¶1} Defendant-appellant, Terrell West ("West"), appeals his convictions and sentence for five counts of rape and kidnapping, and one count of gross sexual imposition. We find no merit to the appeal and affirm.

{¶2} In August 2006, West was charged with multiple counts of rape, kidnapping, felonious assault, and gross sexual imposition involving his minor cousin, K.R. The original indictment alleged that the offenses occurred between September 1998 and June 2004. However, K.R., who was less than 13 years of age at the time the offenses were committed, did not report the crimes until several years later.

{¶3} The case first proceeded to a jury trial in 2007. The court granted West's motion for acquittal on the one count of felonious assault, and the jury returned guilty verdicts on all remaining counts, including attendant sexual motivation and force specifications. The court sentenced West to life imprisonment on all the rape counts, to be served concurrently. The court also ordered all other sentences to run concurrent to the life sentences. This court reversed West's convictions and remanded the case for a new trial. *State v. West*, 8th Dist. No. 90198, 2008-Ohio-5249. The second trial resulted in a hung jury, and the trial court declared a mistrial.

{¶4} Prior to the third trial, the State moved to amend the dates contained in the indictment to conform with the testimony presented in the first two trials. The State did

not present any new evidence to the grand jury for the proposed amendments, and over defense counsel's objection, the trial court allowed the indictment to be amended. Following the third trial, the jury returned guilty verdicts on five counts of rape, five counts of kidnapping, and one count of gross sexual imposition. The court sentenced West to life imprisonment on all rape counts to be served consecutively. The court merged the remaining counts for kidnapping and gross sexual imposition as allied offenses and classified West as a Tier III sex offender. West now appeals, raising seven assignments of error.

<u>Amended Indictment</u>

{¶5} In his first assignment of error, West contends the trial court erred by allowing the State to amend the range of dates contained in the indictment to conform to the testimony presented in the prior trials. West contends the amendments constituted more than just the correction of dates. He claims the amendments should have been presented with evidence to a grand jury.

{¶6} The government must aver all material facts constituting the essential elements of the offense so that the accused not only has adequate notice and an opportunity to defend, but also to protect himself from any future prosecution for the same offenses. *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985). An indictment is sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double

jeopardy. *Hamling v. United States*, 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

{¶7} Crim.R. 7(D) allows a trial court to amend an indictment "at any time," as long as "no change is made in the name or identity of the crime charged." Under R.C. 2941.08, an indictment is valid even if it states the time imperfectly or omits the time, if time is not an essential element of the offense. R.C. 2941.08(B) and (C). The Ohio Supreme Court has specifically held that precise dates or times are not essential elements of offenses. *Sellards* at 170.

{¶8} This court has previously noted that, in cases involving sexual abuse against children, indictments need not state the dates of the alleged abuse with specificity, as long as the prosecution establishes that the offenses occurred within the time frame alleged. *State v. Coles*, 8th Dist. No. 90330, 2008-Ohio-5129, ¶ 33, citing *State v. Yaacov*, 8th Dist. No. 86674, 2006-Ohio-5321, ¶ 17. Courts make allowances in cases in which the child-victim cannot be expected to remember exact dates and times, and in which the child-victim and alleged perpetrator are related, and the course of conduct may have occurred over a period of time. *Id.*, *State v. Robinette*, 5th Dist. No. CA-652, 1987 WL 7153 (Feb. 27, 1987).

{¶9} The amendments to the indictments in this case did not change the name or identity of the crimes charged. West was charged with rape, kidnapping, and gross sexual imposition. The amended indictment did not change that fact. The original indictment alleged that the crimes occurred from September 1, 1998 until June 1, 2004.

The amended indictment alleged that the offenses occurred from June 2000 until June 2004. The amendment shortened the range of time in which the alleged offenses occurred, and remained within the range of time alleged in the original indictment, thus causing no prejudice or surprise to West.

{¶10} We review the trial court's decision to permit the amendment of an indictment for an abuse of discretion. *State v. Beach*, 148 Ohio App.3d 181, 772 N.E.2d 677, 2002-Ohio-2759, at ¶ 23. Because the amendments did not change the identities of the crimes charged but rather narrowed the range of time in which the alleged crimes were committed, we find no abuse of discretion.

{¶11} Accordingly, the first assignment of error is overruled.

## Victim's Credibility

{¶12} In his second assignment of error, West argues the trial court erred by allowing Laura McAliley ("McAliley"), a nurse practitioner, to provide an explanation as to why children often delay their disclosures of sexual abuse. West claims the testimony was offered for the sole purpose of improperly bolstering the victim's credibility.

{¶13} We review trial court decisions to admit or exclude evidence for abuse of discretion. *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991). In *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), the Ohio Supreme Court held that an expert may not offer an opinion on the veracity of a victim's statement. *Id*. at syllabus. However, the expert may offer testimony that provides additional support for the truth of the facts testified to by the child, or which assists the trier of fact in

assessing the child's veracity. *State v. Stowers*, 81 Ohio St.3d 260, 262, 690 N.E.2d 881 (1998).

{¶14} In *Stowers*, a child psychologist and expert in child abuse cases testified that the victims' behavior in that case was consistent with behavior of other sexually abused children she had examined. *Id.* The defendant claimed the expert improperly bolstered the victims' credibility in violation of *Boston*. In rejecting that argument, the court stated that the defendant "fail[ed] to distinguish between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." (Emphasis sic.) *Id.* The court further explained

> Such testimony is permitted to counterbalance the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness. This testimony "does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination."

*Id.* at 263, quoting *State v. Gersin*, 76 Ohio St.3d 491, 494, 668 N.E.2d 486 (1996).

{¶15} McAliley never offered an opinion on K.R.'s truthfulness. She testified that in her experience examining approximately 1,500 child abuse victims, only five to ten of the victims showed physical evidence of anal penetration. She explained the number of victims showing signs of abuse is so low because anal injuries heal quickly and children tend to delay their disclosure of abuse. This testimony did not usurp the jury's role in assessing the victim's credibility but provided the jury information that would

assist them in making an educated determination. Therefore, we find no abuse of discretion.

{¶16} The second assignment of error is overruled.

<u>Sufficiency and Manifest Weight of the Evidence</u>

{¶17} In his third assignment of error, West argues there was insufficient evidence to support his convictions and that his convictions were against the manifest weight of the evidence. We disagree.

{¶18} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), paragraph two of the syllabus.

{¶19} A challenge to the manifest weight of the evidence attacks the verdict in light of the State's burden of proof beyond a reasonable doubt. *Thompkins* at 386-387. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

**{¶20}** West argues the evidence was inadequate because K.R. admitted mistakes and "deliberate falsehoods" in his previous statements to police and during the previous trials. West asserts that the amended indictment and the admission of McAliley's testimony regarding delayed disclosure of child sexual abuse unfairly bolstered his testimony. However, as previously stated, the indictment was lawfully amended and the jury was aware that K.R. had testified differently in the previous trials. McAliley's testimony did not usurp the jury's function in assessing K.R.'s credibility, and K.R. was subjected to cross-examination regarding the dates of the alleged abuse.

**{¶21}** Moreover, the record is replete with evidence establishing proof of every element of the offenses of which West was convicted. West was convicted of five counts of rape under R.C. 2907.02(A)(1)(b), one count of gross sexual imposition under R.C. 2907.05(A)(4), and four counts of kidnapping in violation of R.C. 2905.01(A)(4). R.C. 2907.02(A)(1)(b) provides: "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

**{¶22}** R.C. 2907.05(A)(4), which governs gross sexual imposition of children under 13 years of age, provides that: "[n]o person shall have sexual contact with another when * * * the other person * * * is less than thirteen years of age." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶23} R.C. 2905.01(A)(2) and (A)(4), governing kidnapping, provides: "[n]o person, by force, [or] threat, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." R.C. 2907.01(C) defines "[s]exual activity" as "sexual conduct or sexual contact, or both."

{¶24} K.R. testified about six separate and distinct sexual acts including five instances of rape and one act of gross sexual imposition. Although K.R. could not remember specific dates, he distinguished the separate acts by location, the activity that occurred prior to or after the commission of each offense, and his age at the time each offense was committed. For example, he testified that he often spent nights at West's parents' house on East 187th Street. West orally raped K.R. in this house on two separate occasions. In the first instance, K.R. was sleeping in West's bed when West climbed in bed with him, placed K.R.'s hand on his penis, then forced K.R.'s head down to his penis, and placed his penis in K.R.'s mouth. West ejaculated on K.R.'s forehead.

{¶25} On the second occasion, West again orally raped K.R. in his bed. However, this time West did not place K.R.'s hand on his penis and West ejaculated in K.R.'s mouth. In contrast to the first instance where K.R. remained in bed with West after the rape, this time K.R. ran to the bathroom to rinse his mouth and went to sleep on the couch in the TV room. When his aunt and uncle found him on the couch, they directed him back to West's bed and K.R., who was in second grade, obeyed.

**{¶26}** K.R. testified that West anally raped him in the basement of his aunt's house. K.R.'s aunt had sent him to the basement to retrieve food from the freezer. West followed him into the basement where he grabbed K.R., forcibly pulled his pants down, and anally raped him. After the rape, West told K.R., "Don't say anything or I'll kill you."

**{¶27}** On another occasion, while K.R. was spending another weekend at his aunt's house, West confronted K.R. while he was watching cartoons in the TV room and anally raped him. This time, K.R. was in third grade.

**{¶28}** The last rape occurred at K.R.'s house when West was babysitting. While K.R. was playing video games in the basement with one of his cousins, West called K.R. upstairs to his mother's bedroom, grabbed him, and forcibly raped him. This time, K.R. was in fourth grade.

**{¶29}** In all of the incidents, K.R. testified that West used force to restrain him and compel him to engage in sexual activity against his will. He was under ten years of age during this time. K.R.'s testimony alone is sufficient to support West's convictions.

**{¶30}** Further, the jury assessed K.R.'s credibility and believed his testimony. Although K.R. admittedly was unaware of the exact dates, he described each act with specificity and had no reason to fabricate these stories. Because West testified on his own behalf, the jury also had the opportunity to hear West's side of the story and assess his credibility. West testified that K.R. often spent nights at his parents' house while he was living there. West denied ever sharing a room with K.R. and could not recall where

K.R. slept when he stayed at his parents' house. However, upon further questioning, he admitted, "[h]e might have slept in my room, I don't recall, but he might have slept in my room, too." He also specifically denied engaging in sexual activity with K.R.

**{¶31}** There was no physical evidence linking West to the crimes, and as previously stated, K.R.'s body showed no signs of abuse. The jury's decision was based solely on the credibility of the witnesses. The jury is in the best position to consider the witnesses' demeanor and thus to assess their credibility. The jury is therefore entitled to believe or disbelieve all, part, or none of a witness's testimony. *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 35. It is apparent that the jury in this case chose to believe K.R.

**{¶32}** Given the evidence presented at trial, we cannot say that the jury lost its way or created a manifest miscarriage of justice. Thus, West's convictions are not against the manifest weight of the evidence.

**{¶33}** Therefore, the third assignment of error is overruled.

Juvenile Court

**{¶34}** In his fourth assignment of error, West argues he was denied due process of law because he should have been bound over from juvenile court for the rape offenses he committed as a juvenile. The court instructed the jury that to find West guilty, they had to find that the offenses occurred between June 1, 2000 and June 1, 2004, as alleged in the indictment. West did not reach age 18 until June 20, 2001. West contends that

because he was not charged with the crimes until after he was 18 years old, he was deprived of substantial rights he would have had as a juvenile.

{¶35} R.C. 2151.23(J) provides:

If a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion of the case charging the person with committing that act. In those circumstances, divisions (A) and (B) of this section do not apply regarding the act, and the case charging the person with committing the act shall be a criminal prosecution commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act. All proceedings pertaining to the act shall be within the jurisdiction of the court having jurisdiction of the offense, and that court has all the authority and duties in the case as it has in other criminal cases in that court.

{¶36} Although West allegedly committed some of the offenses before his 18th birthday, because he was not apprehended until after he was 21 years old, the juvenile court lacked jurisdiction, and the case was properly tried in the common pleas court. *Id.*; *State v. Lindstrom*, 8th Dist. No. 96653, 2011-Ohio-6755, ¶ 19.

{¶37} Accordingly, the fourth assignment of error is overruled.

Verdict Forms

{¶38} In the fifth assignment of error, West argues the trial court erred when it included the locations where offenses were committed in the verdict forms.[1] He contends the inclusion not only amended the indictment, which contained no reference to location, but represented an inference that certain acts had in fact occurred, and therefore precluded the jury from making its own independent determination of those facts. West also argues he was "entitled to proper notice of such express allegation in the indictment if it was to be included in the verdict form."

{¶39} The State argues that references to specific locations in the verdict forms provided information to distinguish each act and avoid the due process and double jeopardy problems inherent in carbon copy indictments. *See, e.g.*, *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005); *State v. Ogle*, 8th Dist. No. 87695, 2007-Ohio-5066. In this way, if any counts resulted in acquittals, West would have been protected from further prosecution of those offenses on double jeopardy grounds. *Valentine* at 634-635.

{¶40} The purposes of an indictment are to give an accused adequate notice of the charge and to enable an accused to protect himself or herself from any future prosecutions for the same incident. *Id.*; *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26. Further, Crim.R. 7(D) allows a trial court to amend an indictment to

---

[1] The locations of the alleged offenses were identified in the caption of the verdict forms with the titled offenses. For example, the verdict form for Count 1 states under the case number:

COUNT ONE — RAPE —
Fellatio — Defendant's bedroom.

conform to the evidence presented at trial so long as it does not change the identity of the offense. *State v. O'Brien*, 30 Ohio St.3d 122, 127-28, 508 N.E.2d 144 (1987).

**{¶41}** The verdict forms containing references to specific locations were submitted to the jury in the third trial of this case. As previously stated, the dates contained in the indictment were amended to conform to the evidence presented in the first two trials. There is nothing to suggest that the allegations had changed or that the victim's testimony about where the acts occurred was different in the third trial than in the previous two trials. Although it may be better practice to amend the indictment before adding alleged details of an offense on the verdict form, under the circumstances in this case, we find that West was not prejudiced by lack of notice or that he was unable to defend himself.

**{¶42}** Moreover, the language added to the verdict forms more precisely identified the crimes than the indictment and therefore conferred on West further protection from double jeopardy. Rather than bolster the State's allegations, the verdict forms required the State to prove those additional facts beyond a reasonable doubt and thus increased the State's burden, further protecting West.

**{¶43}** We therefore find no prejudice and the fifth assignment of error is overruled.

### Consecutive Life Sentences

**{¶44}** In the sixth assignment of error, West asserts the trial court abused its discretion in imposing consecutive life sentences. He claims that because there is no evidence that his convictions constituted the worst forms of the offense, or that he posed

the greatest likelihood of committing future crimes, the court should not have imposed consecutive life sentences. We disagree.

**{¶45}** West was sentenced in May 2010, prior to the passage of H.B. 86. Under the statutory law in effect at that time, the trial court was not required to make findings on the record to justify its sentence. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

**{¶46}** The jury found West guilty of raping a child under ten years of age five times over a period of several years. We therefore find the trial court was well within its discretion to impose consecutive life sentences.

**{¶47}** Therefore, the sixth assignment of error is overruled.

<u>Jury Deliberations</u>

**{¶48}** In his seventh assignment of error, West argues the trial court violated his right to procedural due process because the jury's verdict was not the product of careful consideration. The jurors were required to serve beyond their normal period of jury service, and two of the jurors became concerned they would be forced to miss their previously scheduled travel plans.

**{¶49}** West never objected to the court's management of the jury deliberations. Therefore, we review this assigned error solely for plain error. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to

prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at paragraph two of the syllabus.

{¶50} The record demonstrates that the court assured the jurors that it would accommodate them if deliberations extended into their planned vacations. The court noted that the jury had already invested several hours to deliberation, because the jury began deliberating the previous day. The court instructed the jury to proceed with their deliberations and stated: "If this problem still exists when it gets up to the dinner hour, I will talk with you again and we will see if we can't work something out, okay?" After further deliberation, the jury reached a verdict later that same evening.

{¶51} We find nothing in our review of the record that suggests the court pressured the jury to reach a verdict quickly. Rather, the record establishes that the court was aware of the jurors' plans and was willing to accommodate their needs. We find no plain error under these circumstances.

{¶52} Accordingly, the seventh assignment of error is overruled.

{¶53} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR