[Cite as *State v. Johnson*, 2018-Ohio-527.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio                                               Court of Appeals No. WM-16-008

      Appellee                                            Trial Court No. 16CR000076

v.

William F. Johnson, Jr.                                **DECISION AND JUDGMENT**

      Appellant                                           Decided:  February 9, 2018

* * * * *

Katherine J. Zartman, Williams County Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a July 25, 2016 judgment of the Williams County

Court of Common Pleas, finding appellant guilty following a jury trial on seven counts of

rape, in violation of R.C. 2907.02(A)(1)(b), and sentencing appellant to a mandatory term

of life imprisonment. The two victims of these offenses were appellant's six-year-old and nine-year-old stepdaughters. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, William F. Johnson Jr., sets forth the following four assignments of error:

> One: Appellant was denied a fair trial and due process due to the trial court's denial of his motion in limine.

> Two: Appellant's convictions were unsupported by sufficient evidence and were against the manifest weight of the evidence.

> Three: Trial counsel rendered ineffective assistance for failing to request lesser- included offense instructions.

> Four: The trial court erred by imposing payment of attorney fees without a finding of ability to pay.

{¶ 3} The following undisputed facts are relevant to this appeal. This case arises from the discovery and investigation of appellant's commission of approximately 70 instances of multiple categories of rape over the course of several years against his six-year-old and nine-year-old stepdaughters during their periods of visitation at appellant's mobile home located in Bryan, Ohio.

{¶ 4} In 2005, appellant married the mother of the older, nine-year old victim ("J"). J was born to appellant's wife during a prior marriage. In 2008, the marriage between appellant and J's mother ended in divorce. Appellant was subsequently incarcerated following an unrelated felony conviction.

2.

**{¶ 5}** In 2011, appellant was released from prison. Following appellant's release from incarceration, appellant's ex-wife began permitting visitation between appellant, the two children born during their marriage, and J.

**{¶ 6}** In October 2011, appellant's ex-wife acquired a mobile home for appellant to reside in located in Bryan, Ohio. Appellant's two daughters, born while he was married to his ex-wife, as well as J, went to appellant's mobile home on weekends and several times during the week for visitation with appellant.

**{¶ 7}** In May 2012, J began to exhibit new, highly concerning behavior. J was often extremely agitated, bullied other children, began to do very poorly in school, and began to defecate in corners of the family home, rather than in the bathroom.

**{¶ 8}** Given the onset of these behaviors, appellant's ex-wife placed J in therapy. J subsequently refused to continue in visitation with appellant. Ultimately, J disclosed that appellant had committed acts of rape against her and would entice her by exchanging candy, cookies, and money, with the girl prior to committing the sexual offenses against her.

**{¶ 9}** In June 2014, appellant began a relationship with a new woman. Appellant's new girlfriend eventually moved into appellant's mobile home along with her three minor children from a prior relationship. One of these three children is the younger, six-year-old victim ("K").

**{¶ 10}** Notably, shortly after appellant's new girlfriend moved into his home with her six-year-old daughter, appellant downloaded on his smart phone information such as

3.

the statute of limitations chart for sexual offense crimes, the felony sentencing tables for the state of Ohio, and a PDF download describing the warning signs of sexual misconduct.

{¶ 11} On April 12, 2015, less than a year after moving into appellant's home, appellant's girlfriend walked into the doorway of K's bedroom and discovered appellant pinning the victim down to her bed while having his right hand inserted into her pants up to his wrist. The girlfriend screamed at appellant, appellant then denied what had just been plainly witnessed, after which the victim then yelled to her mother that appellant was lying and had committed the action.

{¶ 12} Appellant's girlfriend next examined her daughter and observed red markings around her nipple area. Appellant then conceded that he had placed his hand inside the girl's pants and was "rubbing her pubic bone." However, when the police arrived shortly thereafter, appellant immediately conveyed to them, "I ain't saying a fucking thing."

{¶ 13} During a videotaped interview with the investigating detectives, appellant's version of events evolved once again. Appellant now attributed blame upon the victim, maintaining that he had his hands all over the victim because she had been having a tantrum. Appellant ended cooperation with the investigators. The interview ceased.

{¶ 14} On April 12, 2015, appellant was arrested and charged with the first of the eight total rape charges ultimately filed against him in connection to these events. On June 5, 2015, while incarcerated at CCNO, appellant unsuccessfully attempted suicide utilizing a bed sheet. This event was captured on the prison's video surveillance system.

4.

{¶ 15} The record reflects that during appellant's incarceration at CCNO while awaiting trial, appellant engaged in literally hundreds of phone calls to various persons. Significantly, during portions of these recorded phone calls made from prison, appellant apologized to K for his actions. In addition, appellant told countless incongruous versions of events, depending upon the audience. During one particularly candid moment during a conversation with K's mother, appellant confessed and referred to himself as a monster.

{¶ 16} During subsequent phone calls with K's mother, appellant now unpersuasively suggested that he had done what he had done to punish K in order to get her to listen and obey. Shortly thereafter, appellant yet again changed course and unequivocally exclaimed, "I did it * * * [T]here's no way you can possibly forgive me, I broke something deep inside me, I broke our wedding vows, I hate myself, I'm supposed to be her guardian and I failed, I have so much guilt."

{¶ 17} In subsequent telephone conversations, appellant unconvincingly again attempted to attribute blame for these events upon the victim, claiming that the victim had put Barbie doll parts inside her pants and appellant was simply inside the young girl's pants trying to retrieve pieces of her dolls. Appellant subsequently admitted in another recorded conversation that he had been lying when he relayed the fabricated Barbie doll parts story.

{¶ 18} During the investigation, BCI investigators recovered male amylase from inside K's underwear. Although the amount of DNA recovered was inadequate to

5.

conduct a full comparison to appellant's DNA, the DNA recovered from inside the victim's underwear did not exclude appellant.

{¶ 19} The sexual assault nurse examiner ("SANE") who examined the victim after these events observed redness, tenderness, and abrasions on the victim's labia. In addition, the SANE nurse confirmed that blunt force trauma injuries had occurred to the victim's labia and hymen.

{¶ 20} At trial, expert witness Dr. Randall Schlievert consistently testified that K had suffered acute, penetrating internal injuries to her vagina that could have only been caused by direct penetrating trauma consistent with the victim having suffered from sexual assault such as rape.

{¶ 21} The older victim, J, gave extensive, direct testimony at trial. J testified that appellant would touch her vagina with his hands, mouth, and penis. J further elaborated that appellant would painfully rub her vagina with his hands, would lick her vagina with his mouth, and would push his penis inside her vagina which was very painful. She gave detailed testimony describing the various criminal sexual acts which appellant compelled her to perform upon him. J confirmed that all of the sexual offenses occurred during visitation at appellant's mobile home.

{¶ 22} J testified that these criminal sexual offenses occurred, "[T]oo many times to count." In addition, J conveyed that appellant directly threatened her to never reveal these events to anyone. Appellant would hold his fist up to her face while telling her that she would be sorry if she disclosed these events.

6.

**{¶ 23}** Dr. Schlievert testified that J's sudden acting out behaviors, including defecating in the corners of her home rather than the bathroom, reflected that J had sustained psychological trauma. Dr. Schlievert testified that J's medical examination also revealed physical trauma such as extreme thinning, damage, and scar tissue on her hymen consistent with tears occurring via penetrating trauma only possible through sexual contact.

**{¶ 24}** At the conclusion of the jury trial, appellant was convicted on seven of the eight rape counts pending against him. A presentence investigation was conducted. Appellant was subsequently sentenced to a mandatory term of life imprisonment. This appeal ensued.

**{¶ 25}** In the first assignment of error, appellant maintains that the trial court committed prejudicial error and abused its' discretion in the admission of the non-audio video footage of appellant's suicide attempt while incarcerated at CCNO shortly after being arrested and charged with rape. We do not concur.

**{¶ 26}** It is well-established that the trial court is vested with broad discretion on the admission or exclusion of evidence. *State v. Jenks*, 61 Ohio St.3d 259, 281, 573 N.E. 2d 492 (1991). In conjunction with this, demonstration of an abuse of discretion requires more than showing a mere error of law or judgment. It requires establishing that the disputed trial court action was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

7.

{¶ 27} As specifically applied in the context of appellant's first assignment of error, Ohio courts have routinely held that evidence of a suicide attempt transpiring in the same timeframe as the offense can properly be admitted into evidence as suggestive of potential guilt. *State v. Tvaroch*, 2012-Ohio-5836, 982 N.E.2d 619, ¶ 18 (11th Dist.).

{¶ 28} In the instant case, the record reflects that appellant attempted suicide shortly after the initial, underlying rape arrest. The record further reflects that the state requested, and the court properly instructed the jury that, "You are instructed the defendant's suicide attempt alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness or awareness of guilt." This instruction was communicated to the jury by the trial court immediately prior to the jury's viewing of the disputed videotape and also prior to jury deliberations.

{¶ 29} The record further reflects an abundance of separate, compelling evidence of appellant's guilt regardless of consideration of the disputed videotape. There was direct testimony of the younger victim's mother walking in while the girl was being sexually assaulted by appellant. There was extensive direct testimony from the older victim regarding the ongoing acts of oral, digital and penile rape committed by appellant against her over the course of several years.

{¶ 30} In collaboration with the above evidence, the record further reflects unequivocal expert testimony demonstrating the extensive direct sexual penetration trauma injuries sustained by the victims, as well as collaborating testimony from the treating SANE personnel.

8.

{¶ 31} Lastly, the record reflects recorded conversations in which appellant, at various times, confessed his guilt to these crimes and expressed remorse to one of the victims and the victim's mother.

{¶ 32} Given a wealth of evidence in support of appellant's convictions, even in the absence of the disputed admission of the videotape, appellant cannot demonstrate prejudice.

{¶ 33} The record does not reflect the disputed trial court evidentiary decision to be unreasonable, arbitrary or unconscionable. Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 34} In appellant's second assignment of error, appellant maintains that his convictions regarding J, the older victim, were not supported by sufficient evidence, and that his convictions regarding both victims were against the manifest weight of the evidence. We do not concur.

{¶ 35} It is well-established that when assessing sufficiency of the evidence claims, an appellate court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E. 2d 492 (1991), paragraph two of the syllabus.

{¶ 36} R.C. 2907.02 (A)(1)(b) establishes in relevant part, "[N]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * [W]hen the other person is less than 13 years of age, whether or not the offender knows the age of the other person."

9.

{¶ 37} R.C. 2907.01 defines "sexual conduct" to include, "[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * * Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶ 38} The record reflects, as specifically pertaining to appellant's convictions on offenses committed against J, the older victim, that the trial court heard extensive, detailed and compelling direct evidence from the victim. The victim clearly testified in detail that appellant had committed acts against her when she was under the age of 13 constituting oral intercourse, digital penetration, and vaginal intercourse. The testimony reflected that these offenses took place over the course of three years, "[T]oo many times to count."

{¶ 39} In conjunction with the above evidence, the record further reflects that J's mother furnished collaborating testimony, and Dr. Schlievert also furnished extensive expert testimony regarding the overwhelming medical evidence that J had sustained extreme hymen damage consistent with penetrating sexual trauma, and had exhibited behaviors during the same timeframe, such as defecating in the corners of the family home and no longer using the bathroom, consistent with extreme psychological trauma such as sexual abuse and rape.

{¶ 40} The record reflects ample evidence from which a rational trier of fact could have found the essential elements of the crimes committed against J by appellant proven beyond a reasonable doubt.

10.

{¶ 41} Appellant further maintains that all of the underlying convictions against him involving both victims were against the manifest weight of the evidence. The record of evidence does not comport with this claim.

{¶ 42} When assessing whether a disputed conviction is against the manifest weight of the evidence, the appellate court must review the record, weigh the evidence and all reasonable inferences, consider witness credibility and decide whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way so as to cause a manifest miscarriage of justice. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.).

{¶ 43} In applying this standard to the instant case, we note that the record of evidence reflects extensive medical expert testimony demonstrating that both victims sustained penetration sexual trauma injuries consistent with the offenses during the relevant timeframe. The record further reflects that the mother of K walked in on appellant assaulting her daughter, interrupted the incident, and gave direct testimony to the trial court. The record reflects that J furnished extensive, direct testimony establishing numerous acts of rape perpetrated against her by appellant over the course of several years.

{¶ 44} In conjunction with the above, the record further reflects that appellant was recorded during telephone conversations during his CCNO incarceration confessing to the crimes, apologizing to K, apologizing to K's mother, and expressing extreme remorse, referring to himself as a "monster." The record further reflects that appellant unsuccessfully attempted suicide shortly after being arrested on these matters.

11.

**{¶ 45}** We find that the record of evidence encompasses ample, compelling evidence of appellant's guilt of these offenses. The record is devoid of any evidence that the jury lost its way in this matter or caused a manifest miscarriage of justice.

**{¶ 46}** Wherefore, we find that the record of evidence clearly reflects that appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. We find appellant's second assignment of error not well-taken.

**{¶ 47}** In the third assignment of error, appellant contends that trial counsel was ineffective by not requesting jury instructions on a lesser included offense with regard to the charges involving J. We do not concur.

**{¶ 48}** In order to prevail on a claim of ineffective assistance of counsel, it must be demonstrated both that trial counsel was deficient in certain respects, and that but for the deficiencies the outcome of the case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 104 S.Ct. 2052, 80 L.E.2d 674 (1984).

**{¶ 49}** In support of the third assignment of error, appellant maintains that trial counsel was ineffective in connection to victim J for declining to request instructions on a lesser included offense.

**{¶ 50}** Given our determination above that the record of evidence reflects sufficient evidence of appellant's guilt of all convictions against both victims, and that the convictions were not against the manifest weight of the evidence, appellant cannot demonstrate that the outcome of this matter would have been different but for the alleged

12.

deficiency in requesting lesser included offense instructions in connection to an offense for which ample, sufficient evidence of guilt of the offense as charged was presented to the trial court.

{¶ 51} Wherefore, we find appellant's third assignment of error not well-taken.

{¶ 52} In appellant's fourth assignment of error, appellant contends that the trial court erred in imposing the cost of attorney's fees against appellant. We do not concur.

{¶ 53} R.C. 2941.51(D) establishes that, "[I]f the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay."

{¶ 54} This court has consistently held that the imposition of costs of counsel requires the trial court to consider appellant's ability to pay. Although a separate hearing is not required, the imposition of the costs must be supported by clear and convincing evidence. *State v. Maloy*, 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 14.

{¶ 55} As applied to the instant case, the record of evidence reflects, and the presentence investigation report confirms, that appellant was 41 years of age at the time of sentencing, possessed a GED, was not suffering from any significant physical health ailments, possessed a valid driver's license, and was receiving monthly social security benefit payments.

{¶ 56} Given these facts and circumstances, the record reflects clear and convincing evidence in support of the disputed ruling that appellant exhibited an ability to pay fees for counsel. We find appellant's fourth assignment of error not well-taken.

13.

**{¶ 57}** Based upon the foregoing, we find that substantial justice has been done in this matter. The judgment of the Williams County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Christine E. Mayle, P. J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE