[Cite as *State v. Williams* , 2018-Ohio-3368.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106266**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**REGINALD D. WILLIAMS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-612202-A

**BEFORE:** Jones, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
2200 Terminal Tower
50 Public Square
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Kristen L. Sobieski
        Mary M. Frey
        Gregory Paul
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Reginald D. Williams ("Williams") appeals his convictions for rape, aggravated robbery, and kidnapping.   We affirm.

**Procedural History and Facts Presented at Trial**

{¶2} In 2016, Williams was charged as follows: Count 1, rape in violation of  R.C. 2907.02(A)(2), with one- and three-year firearm specifications; Count 2, complicity in violation of R.C. 2923.03(A)(2), with one- and three-year firearm specifications; Count 3, aggravated robbery in violation of R.C. 2911.01(A)(1), with one- and three-year firearm specifications; Count 4, kidnapping in violation of R.C. 2905.01(A)(2) with one- and three-year firearm specifications; and Count 5, kidnapping in violation of R.C. 2905.01(A)(4), with one- and three-year firearm and sexual motivation specifications.

{¶3} During pretrial proceedings, Williams filed a motion to dismiss based on preindictment delay.   The trial court held a hearing on the motion and denied it.   Williams also requested a competency evaluation, and the trial court referred Williams to the court's psychiatric clinic.   The parties subsequently waived the competency hearing and stipulated to the court's psychiatric report in which the evaluating doctor opined that Williams refused or was unable to cooperate with the evaluation, so the doctor was unable to render an opinion as to Williams's competency.   The trial court then ordered Williams to undergo an inpatient competency evaluation.   Williams requested an independent competency evaluation.   Both evaluating doctors opined that Williams was competent to stand trial, and the parties stipulated to the competency evaluations.

{¶4} Williams twice requested that his appointed counsel be disqualified and he be appointed new counsel, claiming that he had not seen discovery documents, his counsel was not

arguing what he wanted in pretrial motions, and he did not "feel comfortable" with trial counsel. The trial court denied Williams's motion.

{¶5} The matter proceeded to a trial by jury, at which the following pertinent evidence was presented.

{¶6} T.B. testified that on May 18, 1997, she left work and headed to the bus stop at East 125th Street and St. Clair Avenue in Cleveland. As she waited for the bus, two unknown males approached her. One of the males had a scar on his face. One of the males pulled out a short shotgun. T.B. thought she might be shot if she tried to leave. The men demanded her belongings, and she gave them her cell phone and necklace. The men left, but came back. T.B. tried to run, but the men caught up to her and, with the gun pointed at her, told her to come with them or they would kill her.

{¶7} The men took T.B. to a nearby alley and put her in the backseat of a car. One of the men then sat in the front seat of the car and pointed the gun at T.B. while the other man vaginally penetrated her. Then, the men switched places: the man who had been raping her got into the front seat and pointed the shotgun at her while the other man vaginally penetrated her. Neither man used a condom.

{¶8} T.B. testified that she did not try to fight the men because she was scared the men would kill her. T.B. approximated that the assault lasted about "15 or 20" minutes.

{¶9} After the rape, the men let T.B. leave. She ran to a nearby gas station where she saw a friend, Sam, who took her to her mother's house. T.B.'s mother took her to the hospital where T.B. underwent a sexual assault examination.

{¶10} Cleveland Police Officer Bobby Rose ("Officer Rose") testified at trial that he and his partner at the time, Officer Gerald Wolf, were dispatched to the hospital to respond to a

report of rape. The officers interviewed T.B. and Officer Rose recalled that T.B. was very shaken and crying when he first encountered her. T.B. described the suspects and reported that one of the males had a scar on his face. She did not know the men. T.B. told the officers the men initially approached her at the bus stop and demanded money and took her necklace. She also reported that she was raped in a church parking lot in the area of E. 124th Street and St. Clair Avenue, the men had a sawed-off shotgun, and they fled in a burgundy Oldsmobile.

{¶11} In 2016, Dan Clark ("Clark"), an investigator with the Cuyahoga County Prosecutor's Office Sexual Assault Kit Task Force, was assigned to investigate the case. As part of his investigation, Clark reviewed the original police report and discovered that, in 2006, a preliminary DNA association was made between Williams's DNA and the forensic evidence in T.B.'s sexual assault kit. Clark secured a search warrant, took a buccal swab of DNA from Williams, and submitted the swab to the Ohio Bureau of Criminal Investigation ("BCI") to: (1) compare to the evidence contained in T.B.'s sexual assault kit and (2) confirm the preliminary association of Williams's DNA to the DNA profile contained in the kit.

{¶12} Clark testified that as part of the investigation, a blind administrator, who was another investigator not associated with the case, showed T.B. a "six-pack" photo array that included a photo of Williams to see if T.B. recognized anyone as one of the men who assaulted her. T.B. was unable to identify anyone as one of her assailants.

{¶13} Stacy Violi ("Violi"), a BCI forensic scientist, compared the buccal swab of DNA extracted from Williams and the biological evidence extracted from T.B.'s sexual assault kit. Violi's DNA report, dated December 29, 2016, identified Williams as a major contributor to the seminal fluid extracted from a cutting of the thigh area of T.B.'s pants and from the skin-stain swabs lifted from T.B. An unknown male DNA profile was identified as a major contributor to

the seminal fluid found on a swab and a cutting of T.B.'s underwear; Williams and T.B.'s boyfriend at the time were excluded as the major contributor of those samples.

{¶14} Williams testified that he had been to prison six times and had convictions for drug offenses, felonious assault, and aggravated robbery, improper handling of firearm in a motor vehicle, having a weapon while under disability, and carrying a concealed weapon. According to Williams, he knew T.B. and had known her since the summer of 1995 when he met her at a festival in his neighborhood and asked for her pager number. He testified that he and T.B. started having sex that summer and the relationship lasted for one or two months. He lost touch with her until 1997 when he saw her where she worked and the two started having sex again.

{¶15} According to Williams, he picked T.B. up from work on May 18, 1997, with his friend Wayne. Williams did not know Wayne's last name or where he lived in 1997 or currently. They drove to Williams's house and he and T.B. had sex inside his house while Wayne waited in the car. They then drove T.B. to the corner of her street and let her out.

{¶16} Williams testified that he saw T.B. again in 2010 and T.B. told him about the "DNA hit" but that he "ain't got nothin' to worry about." According to Williams, T.B. was telling people Williams had raped her in retaliation for money he had borrowed from her and refused to pay back. T.B. also sent him letters in jail, but he did not keep any of the letters. He had to throw them out or other inmates would steal them.

{¶17} Williams testified that he told Clark that he did not remember anything that happened in 1997 because he was doing too many drugs at the time. He also testified that he tried to hang himself while he was in jail the night before his first trial date because he was stressed and had a lot of responsibilities, and it was not the first time he tried to kill himself. He also admitted that he lied to a doctor previously about claiming that he tried to kill himself as a

teenager.

{¶18} The jury acquitted Williams of aggravated robbery and convicted him of the remaining charges and specifications. The trial court sentenced him to a total of 23 years in prison.

{¶19} Williams now appeals, raising ten assignments of error for our review.

## Assignments of Error

I. The trial court erred when it denied Williams's motion to dismiss due to a nineteen-year preindictment delay.

II. The trial court erred when it failed to grant a mistrial after there was an outburst in the courtroom where Williams blurted out that he did not expect the victim to appear for trial.

III. Williams was denied his right to the effective assistance of trial counsel as guaranteed to him by the Sixth Amendment to the U.S. Constitution and Article 1, Section 10, of the Ohio Constitution.

IV. The convictions for the firearm specifications were against the manifest weight of the evidence and not supported by sufficient evidence.

V. The trial court erred when it permitted testimony that Williams tried to hang himself the night before his first trial and when it admitted pictures of Williams's jail cell.

VI. The trial court erred when it incorrectly merged the counts for sentencing.

VII. The trial court erred when it did not grant Williams's motion to disqualify appointed counsel.

VIII. The convictions were not supported by sufficient evidence due to a lack of identification testimony.

IX. The convictions were against the manifest weight of the evidence because Williams was not conclusively identified as the perpetrator.

X. The trial court erred when it tried Williams as an adult without any bindover proceedings when he was seventeen years old at the time of the alleged crimes.

**Law and Analysis**

**Preindictment Delay**

{¶20} In the first assignment of error, Williams claims that the trial court erred in denying his motion to dismiss due to preindictment delay.

{¶21} We apply a de novo standard of review to the legal issues but afford great deference to findings of fact made by the trial judge when reviewing a trial court's decision on a motion to dismiss for preindictment delay. *State v. Tate*, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 18 (8th Dist.), citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034.

{¶22} The statute of limitations governing a particular crime provides the "primary guarantee against bringing overly stale criminal charges." *State v. Copeland*, 8th Dist. Cuyahoga No. 89455, 2008-Ohio-234, ¶ 10, citing *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Nonetheless, the delay between the commission of an offense and an indictment can, under certain circumstances, constitute a violation of due process of law guaranteed by the federal and state constitutions. *State v. McDonall*, 8th Dist. Cuyahoga No. 105787, 2018-Ohio-2065, ¶ 27; *see also State v. Luck*, 15 Ohio St.3d 150, 154, 472 N.E.2d 1097 (1984); *Lovasco* at 789. For instance, a delay in commencing prosecution is not justified when the state uses the delay to gain a tactical advantage or through negligence or error ceases its investigation and then later, without new evidence, decides to prosecute. *Luck* at 158.

{¶23} The statute of limitations for rape and kidnapping is 20 years. R.C. 2901.13(A)(3). Here, it is undisputed that Williams was indicted within the statute of limitations for rape and kidnapping.

{¶24} Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The burden is first on the defendant to present evidence of actual

prejudice; once a defendant does so, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 702 N.E.2d 1199 (1998). A court must determine whether the defendant has established actual prejudice to his or her ability to defend him or herself before independently determining whether the state met its burden of establishing a justifiable reason for the delay in bringing charges. *State v. Hunter*, 8th Dist. Cuyahoga No. 104789, 2017-Ohio-4180, ¶ 11, citing *Jones* at ¶ 16-18, 29.

> A determination of actual prejudice involves "'a delicate judgment'" and a case-by-case consideration of the particular circumstances. A court must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." [The Ohio Supreme Court] has suggested that speculative prejudice does not satisfy the defendant's burden.

> The "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

(Citations omitted.) *Jones* at ¶ 20-21.

**{¶25}** At the hearing on the motion to dismiss, Williams argued that he suffered actual prejudice because Sam, the man T.B. testified helped her after the rape, and the car used in the crime were unavailable.

**{¶26}** While a defendant is not required to articulate specifically what the testimony of a missing witness would have been, he or she is required to provide an explanation of what exculpatory testimony the witness might have offered. *Jones* at ¶ 28, citing *State v. Adams*, 144

Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103. A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case. *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, ¶ 5, citing *State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175, ¶ 13 (8th Dist.).

{¶27} Although Williams claims he suffered actual prejudice, as the state pointed out during the hearing on the motion to dismiss, Williams failed to show that Sam was unavailable to serve as a witness and did not offer an explanation of what exculpatory testimony Sam might have offered. In fact, Williams's attorney admitted that she could only speculate as to what Sam's testimony might have been and Sam's testimony "may not have necessarily helped Mr. Williams, but it sure may have. We don't know."

{¶28} Williams also argued that had there not been a delay in indicting him the police could have tested the car where the rape occurred for fluids. Again, the possibility that the car could have served as evidence is insufficient to show actual prejudice, especially since Williams claimed he had consensual sex with T.B.

{¶29} For the first time on appeal, Williams claims he can show actual prejudice because Wayne, whom Williams testified was with him when he picked T.B. up from work, would have testified that the sex between T.B. and Williams was consensual. According to Williams, Wayne died in 2012. Williams, however, failed to argue at the motion hearing that he suffered prejudice due to Wayne's unavailability. Therefore, his argument as to Wayne is waived. Williams also claims for the first time on appeal that he can no longer subpoena T.B.'s timesheet and work hours for May 18, 1997, because the restaurant she worked at went out of business. But Williams has likewise waived this argument because he did not raise this issue at the hearing on the motion to dismiss.

{¶30} Even if these arguments were not waived, we do not find that they rise to the level of actual prejudice. Williams testified that he did not know Wayne's last name or where he lived in 1997, only that he died in 2012. He further testified that although Wayne would testify that the sex he (Williams) had with T.B. was consensual, Wayne was not in his house when he allegedly had consensual sexual intercourse with T.B. — Wayne was in the car. Williams also has not explained how T.B.'s timesheet would serve as exculpatory evidence, because, under both his theory and the state's theory of the case, T.B. was at work before the incident occurred.

{¶31} Consequently, Williams did not meet his burden of showing actual prejudice and the trial court did not err in denying his motion to dismiss.

{¶32} The first assignment of error is overruled.

**Trial Proceedings — Second and Fifth Assignments of Error**

{¶33} In the second assignment of error, Williams contends that the trial court erred when it did not declare a mistrial after his outburst at trial. In the fifth assignment of error, Williams claims that the trial court erred in permitting testimony that Williams tried to hang himself the day before trial and in allowing into evidence pictures of his jail cell.

{¶34} Granting a mistrial is an extraordinary remedy for an error. *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 36. Consequently, a mistrial should not be ordered simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties. *Tingue v. State*, 90 Ohio St. 368, 1088 N.E. 222 (1914), syllabus. Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶35}** This court reviews a denial of a motion for mistrial under an abuse of discretion standard. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Thus, this court will only reverse the trial court's denial of Williams's request for a mistrial if it finds the trial court's decision to deny the request unreasonable, arbitrary, or unconscionable.

**{¶36}** During trial, the state called T.B. to testify. As T.B. was taking her seat in the witness chair, the following exchange occurred:

> Williams: Man, [T.B.] what you doin'? You just wrote me and told me you weren't coming.
>
> * * *
>
> Williams: Ma'am, your Honor. I know this woman. We've been having sex since I was 15 years old. She's been —
>
> Prosecutor: Your Honor, I'm going to object to this outburst.
>
> * * *
>
> Williams: Her address [is ] * * * Road.
>
> Williams: She been telling me she wasn't coming. This is bull [* * *].
>
> Williams: She been writing letters. Her address * * * . I know this woman.
>
> Court: * * * you're going to be removed from the courtroom right now. Take him away now.
>
> Williams: You just told me you weren't coming. Man, I don't believe you just show up when you just told me you weren't coming.

**{¶37}** The court ordered a recess and outlined, on the record and outside of the presence

of the jury, what had occurred and also what happened after Williams was removed from the courtroom, namely that he banged on his cell door so hard that the trial court in the adjacent courtroom was forced to stop its own proceedings. The trial court further noted that the jury was not privy to the disruption in the adjacent courtroom.

{¶38} The state requested Williams be removed from the courtroom for the duration of trial and the jury be instructed to disregard his outburst. Defense counsel suggested the court instead warn Williams that any further outbursts would cause him to be removed for the remainder of trial. The trial court warned Williams and stated that it would admonish the jury to disregard Williams's outburst.

{¶39} At Williams's request, defense counsel requested a mistrial, stating that Williams felt that the jury would be tainted by his conduct. The trial court noted that Williams himself had caused the commotion and denied his motion for a mistrial. The court instructed the jury as soon as the jury returned to courtroom: "You are to completely disregard anything and everything you heard from the mouth of the defendant, Mr. Williams. He was not under oath, his statements are not testimony, they are not evidence, you must not and shall not consider them for any purpose whatsoever."

{¶40} Williams argues on appeal that his outburst prejudiced him and removed the possibility of his receiving a fair trial. According to Williams, the court should have polled the jury to see if the jury could remain fair and impartial. But as Williams himself admits, when an emotional outburst takes place in court, whether the outburst "deprived the defendant of a fair trial by improperly influencing the jury," *State v. Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶ 44, "is a factual question to be resolved by the trial court, whose determination will not be overturned absent clear, affirmative evidence of error." *State v. White*, 85 Ohio

St.3d 433, 440, 709 N.E.2d 140 (1999), citing *State v. Morales*, 32 Ohio St.3d 252, 513 N.E.2d 267 (1987). Moreover, Williams's argument on appeal falls under the invited error doctrine. *State v. Gumins*, 8th Dist. Cuyahoga No. 90447, 2008-Ohio-4238, ¶ 18 (under the doctrine of invited error, a litigant may not take advantage of an error that he or she invited or induced).

{¶41} The trial court appropriately cautioned the jury to disregard Williams's outburst and used its discretion to determine that Williams could still receive a fair trial. There is no evidence that the outburst materially affected the merits of the case or otherwise prejudiced Williams — in fact, one could argue that Williams's outburst supported his claim that he and T.B. knew each other and thus bolstered his theory of the case.

{¶42} Williams also contends that he was prejudiced by testimony that he tried to hang himself the night before his scheduled trial date and pictures of his jail cell. It is well-settled that the trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court. *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶43} Williams argues that his attempted suicide was not evidence of his consciousness of guilt and gave alternative reasons for trying to kill himself — he would rather die than risk going to trial or he was depressed. He argues that the evidence was not relevant and, even if relevant, the prejudicial nature of the evidence outweighed its probative value.

{¶44} During cross-examination, the state raised the issue of Williams's attempted suicide to rebut Williams's testimony that T.B. concocted the story that she was raped and "it never happened." When the state questioned why Williams tried to hang himself on the eve

of the first scheduled trial date, Williams testified that he was upset over his cousin's death and other family issues, but insisted that the suicide attempt was unrelated to the case.

{¶45} In *State v. Williams*, 79 Ohio St.3d 1, 679 N.E.2d 646 (1997), the Ohio Supreme Court stated: "[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Id.* at 11, citing *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969). Courts have held that the threat of suicide falls within the ambit and contemplation of related conduct under the definition of consciousness of guilt under *Williams*. *See*, *e.g., State v. Tvaroch*, 2012-Ohio-5836, 982 N.E.2d 751, ¶ 26 (11th Dist.). Courts have also found that a suicide attempt can be used to show consciousness of guilt. *See, e.g., State v. Johnson*, 6th Dist. Williams No. WM-16-008, 2018-Ohio-527, ¶ 27 (evidence of a suicide attempt transpiring in the same timeframe as the offense can properly be admitted into evidence as suggestive of potential guilt). And this court has noted that a defendant showed a consciousness of guilt after killing his wife by twice trying to commit suicide. *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 29.

{¶46} In light of the above, we find that the trial court did not abuse its discretion in allowing the state's line of questioning on cross-examination.

{¶47} The trial court also did not abuse its discretion by allowing the state to enter pictures of Williams's jail cell into evidence. The admissibility of photographs is within the sound discretion of the trial court. *State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394 (1967), paragraph two of the syllabus. "[A]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). But the introduction of photographs may be proper

when being used as impeachment evidence. *State v. Dodson*, 2012-Ohio-5576, 983 N.E.2d 797, ¶ 11 (3d Dist.).

**{¶48}** Williams claims that the state only showed the pictures to let the jury know that Williams was incarcerated. The state used the pictures, which showed letters and other papers in Williams's cell, however, to rebut Williams's testimony that he threw out T.B.'s letters because otherwise another inmate would steal them. The photographs were probative because they spoke to Williams's claim that he did not keep any personal papers in his cell; the state introduced the photographs of his jail cell to impeach Williams's testimony that he did not keep personal papers in his cell and to attack his credibility with regard to T.B. mailing him letters.

**{¶49}** In light of the above, the trial court did not abuse its discretion in denying Williams's motion for a mistrial, for allowing in Williams's own testimony about his suicide attempt, or for allowing in pictures of Williams's jail cell.

**{¶50}** The second and fifth assignments of error are overruled.

**Trial Counsel — Third and Seventh Assignments of Error**

**{¶51}** In the seventh assignment of error, Williams claims the court erred when it denied his motion to disqualify counsel. In the third assignment of error, Williams claims he was afforded ineffective assistance of counsel.

**{¶52}** Williams claims that he and his two attorneys were "so at odds" with each other and the breakdown in the relationship was such that they could no longer communicate effectively. Under these circumstances, Williams claims, the trial court should have granted the motion to disqualify and either appointed new counsel, or allowed Williams to retain counsel of his choosing.

**{¶53}** In *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), the Ohio Supreme

Court held that when an accused raises a specific complaint regarding his or her dissatisfaction with counsel during the course of the trial, the trial court has an obligation to ensure that the record contains an adequate investigation of the complaint before continuing with the trial. *Id.* at 19-20. The defendant bears the burden of demonstrating grounds for the appointment of new counsel. If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record. *Id.* at 20. This judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68, citing *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (4th Dist.1998).

{¶54} The decision whether or not to remove court-appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. *State v. Jones*, 91 Ohio St.3d 335, 342-343, 744 N.E.2d 1163 (2001). Generally, "an indigent defendant's right to counsel does not extend to counsel of the defendant's choice." *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965).[1] Rather, "[t]o discharge a court-appointed attorney, the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'" *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970).

{¶55} Williams does not support his claim by pointing to any specific incidents in the

---

[1]Although Williams contends he should have been able to have a new attorney either appointed to him or allowed to retain an attorney, Williams has claimed indigence throughout the entire trial court and appellate court proceedings; there is no evidence he pursued retaining his own counsel.

record that show problems between Williams and his two attorneys, and it is not this court's duty to make Williams's argument for him. *See* App.R.12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * * .") That being said, after a review of the record, we find that the trial court did not abuse its discretion. There is no evidence that Williams's right to effective assistance of counsel was jeopardized when the court denied his motion.

{¶56} Williams further claims that his trial counsel was ineffective by failing to conduct meaningful cross-examination of the state's DNA expert and by failing to move to suppress the photo array.

{¶57} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Price*, 5th Dist. Holmes No. 17CA015, 2018-Ohio-1988, ¶ 71, citing *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Price* at *id.,* citing *Phillips* at *id.*

{¶58} It was acceptable trial strategy for Williams's attorneys to decide not to seek suppression of the photo array because the victim did not identify anyone, including Williams from the photo array as her attacker. Seeking to suppress the photo array would not have

advanced Williams's defense; instead, his defense was likely advanced by T.B.'s inability to identify him as one of her attackers.

**{¶59}** Williams contends that defense counsel should have questioned the DNA analyst on whether her findings could have been consistent with consensual sex and raised the issue of "secondary transfer" of DNA.[2]   But the scope of cross-examination falls within the realm of trial strategy.   *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 33, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

**{¶60}** The record in this matter demonstrates that defense counsel cross-examined the state's witnesses thoroughly and that any deficiencies were either matters of trial strategy or do not rise to the level of prejudice.   Trial counsel may have decided not to challenge Williams's DNA being a major contributor to the seminal fluid extracted from a cutting of T.B.'s pants and from the skin-stain swabs under the theory of secondary transfer because Williams's primary defense was that he had consensual sex with T.B.   Moreover, counsel for Williams *did* confirm with the BCI analyst that the presence of DNA did not explain how Williams's DNA got on T.B., i.e., consensual versus nonconsensual sexual intercourse:

> Defense counsel: * * * any presence of DNA just shows that, correct, it shows just that DNA is present?
>
> Violi:     Yes.
>
> Defense counsel:   It does show doesn't give any explanation as to how it got there.
>
> Violi: Correct.

**{¶61}** Based on the above, we cannot say that defense counsel was deficient, nor does Williams demonstrate any prejudice by his defense counsel's representation.

**{¶62}** The third and seventh assignments of error are overruled.

**Sufficiency and Manifest Weight of the Evidence — Fourth, Eighth, and Ninth Assignments of Error**

**{¶63}** Williams challenges the sufficiency and manifest weight of the evidence in his fourth, eighth, and ninth assignments of error.

**{¶64}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The Supreme Court of Ohio delineated the role of an appellate court presented with a sufficiency of the evidence argument in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *

**{¶65}** Whether the evidence is legally sufficient is a question of law, not fact. *Thompkins* at 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Consequently,

---

[2]Secondary transfer of DNA is the transfer of DNA through an intermediary.

the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79; *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks* at 273.

**{¶66}** A manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id*., quoting *Martin* at *id.*

**{¶67}** A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. Neither is a conviction against the manifest weight of the evidence because the trier of fact believed the state's version of events over that of the appellant. *State v. Williams*, 10th Dist. Franklin No. 08AP-719, 2009-Ohio-3237, ¶ 17. The trier of fact

is free to believe or disbelieve all, part, or none of each witness's testimony. *State v. Sheppard*, 1st Dist. Hamilton No. C-000553, 2001 Ohio App. LEXIS 4590, 22 (Oct. 12, 2001).

{¶68} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15, citing *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 Ohio App. LEXIS 4255 (Sept. 17, 1997).

## 1. firearm specifications

{¶69} Williams argues that the evidence was insufficient to convict him of the firearm specifications and the convictions were against the manifest weight of the evidence because T.B. was the only person who testified a gun was used during the commission of the crime.

{¶70} Conviction of a gun specification under R.C. 2941.145 requires the state to prove that a defendant had a firearm on or about the defendant's person or under the defendant's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the defendant possessed the firearm, or used it to facilitate the offense.

{¶71} In *State v. Reynolds*, 6th Dist. Lucas No. L-16-1080, 2018-Ohio-40, ¶ 64, *discretionary appeal not allowed*, 2018-Ohio-1795, the court found sufficient evidence to prove the gun specification when multiple victims testified that an unknown man engaged in penetrative sex with each victim against her will, which he accomplished by placing an object he said was a gun against her body and threatening to shoot her if she did not comply. BCI scientists testified that DNA found in or around each victim's vagina was consistent with the defendant's DNA. The court found that the DNA and the victims' testimony were sufficient to show that the defendant indicated that he possessed a gun at the time of the rapes or used the gun

to facilitate the rapes.   *Id.* at ¶ 64.     For the same reasons, the conviction on the firearm specification was also not against the manifest weight of the evidence.    *Id.* at ¶ 67.

{¶72} Likewise, in this case, T.B. testified that two men approached her at a bus stop, one of the men carried a "short" shotgun, and the men used the gun to rob her of her belongings. The men left, but returned, and again pointed the gun at her and took her from the bus stop to their car where they both raped her at gunpoint.   During the rape, T.B. did not resist because the men had the gun pointed at her head and she was afraid they would kill her.

{¶73} Based on this, there was sufficient evidence to convict Williams of the firearm specifications and the convictions were not against the manifest weight of the evidence.


## 2.   identification testimony

{¶74} Williams also contends that there was insufficient evidence to convict him due to a lack of identification testimony.   In the eighth and ninth assignments of error, Williams argues that because T.B. could not recall many details of the incident while testifying, could not identify who raped her, and Williams testified that he and T.B. had consensual sex on many occasions, he was never conclusively identified as her attacker.

{¶75} As mentioned, the trier of fact is free to believe all, some, or none of the testimony of each witness appearing before it.   *Sheppard*, 1st Dist. Hamilton No. C-000553, 2001 Ohio App. LEXIS 4590, at 22.   The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.   *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶76} While it is true that T.B. was unable to pick Williams out of a photo lineup, she identified him in court as one of the men who attacked her, testified that she did not know him

and had not met him before the day of the rape, and testified that she did not have consensual sex with him. Her testimony was corroborated by the DNA results and her actions following the assault. T.B. testified she ran to a gas station immediately following the assault. She was taken to the hospital where a rape kit was performed. Officer Rose recalled that T.B. was shaken and crying when he encountered her in the hospital. Williams's DNA was found on T.B. and her clothes.

{¶77} It was within the province of the jury to determine whose testimony to believe, T.B.'s or Williams's, and the jury gave more credence to T.B.'s testimony. We will not usurp the important role of the trier of fact; this is not the rare case in which the jury lost its way in convicting Williams of rape, complicity, and kidnapping.

{¶78} In light of the above, the fourth, eighth, and ninth assignments of error are overruled.

**Allied Offenses — Sixth Assignment of Error**

{¶79} In the sixth assignment of error, Williams argues that his offenses are allied and should have merged for the purposes of sentencing. Specifically, Williams contends that the two counts of kidnapping should have merged, the rape and kidnapping should have merged, and the rape and complicity should have merged.

{¶80} R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar
>
> import, or where his [or her] conduct results in two or more offenses of the same

or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶81} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that an allied offenses analysis is not limited to just a consideration of the defendant's conduct. The *Ruff* court held that while an allied offenses analysis begins with an examination of the defendant's conduct, courts must also consider whether (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

### 1. kidnapping counts

{¶82} Williams contends that the two counts of kidnapping should have merged because "it was more one long course of event, all conjoined with the alleged rape." We disagree.

{¶83} The two kidnappings were committed separately. Williams initially restrained T.B.'s liberty at the bus stop for the purpose of taking her necklace and phone.[3] Williams and his

---

[3]Although Williams was convicted of the crime of kidnapping in the commission of a felony but acquitted of the underlying felony (aggravated robbery), Williams does not claim on appeal his kidnapping convictions must merge because he was acquitted of the aggravated robbery charge and we have already found sufficient evidence to support his convictions. Even if Williams had made this argument, the United States Supreme Court has long held that consistency in verdicts is not necessary. *See United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *see also State v. Daley*, 3d Dist. Seneca No. 13-13-26, 2014-Ohio-2128, ¶ 80 (the finding of not guilty on a specification does not undermine the verdict on a principal charge, as long as the principal charge is supported by the evidence).

accomplice then left the scene. This created a break in time. Pursuant to *Ruff*, this kidnapping offense was committed separate in time and with a separate motivation than the second kidnapping. The second kidnapping occurred when Williams and his accomplice returned and made T.B. leave the bus stop so they could take her to their car where they raped her.

## 2. rape and kidnapping counts

{¶84} The Ohio Supreme Court has recognized that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). The *Logan* court provided the following guidelines for determining whether rape and kidnapping are allied offenses that should merge for sentencing:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id*. at the syllabus.

{¶85} The only case Williams cites to support his position that his rape and kidnapping offenses should merge is *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138. In *Echols*, this court found that the trial court erred when it did not merge the rape and kidnapping offenses because the evidence of the asportation of the victim was slight — the victim was

moved from the sidewalk to behind a tree next to the sidewalk.   This court found that

> [t]here was no increased risk of harm associated with this movement apart from
> that associated with the sexual assault.   This movement was done for the purpose
> of raping [the victim] with no separate, identifiable harm [and done] in
> conjunction with the rape, and was not separated by any significant length of time
> or distance.

*Id.* at ¶ 38.

**{¶86}** We find this case to be more akin to this court's recent decision in *State v. Buchanan*, 8th Dist. Cuyahoga No. 105706, 2018-Ohio-1086.   In *Buchanan*, the victim was waiting at the bus stop.   The defendant approached her and robbed her of her money, purse, and cell phone.   The defendant told the victim that he would return her belongings but first she had to go to a different location.   He made her walk down a side street to where his vehicle was parked.   He forced the victim inside the van where he raped her.   *Id.* at ¶ 54. This court held that the kidnapping and rape were separate crimes performed with a separate animus.   This court noted that the defendant forced the victim to go to a secretive location, forced her inside his van, and punched her causing her to lose consciousness.   This was ample support for the trial court to find that the kidnapping and the rape were separate and distinct crimes.   *Id.* at ¶ 56.

**{¶87}** In this case, T.B. testified that after Williams and his accomplice robbed her, they returned and forced her at gunpoint to walk with them a few blocks to where their car was located.   The men forced her in their car at gunpoint where they took turns having sex with her at gunpoint.   Thus, there was ample support for the trial court to find that the kidnapping and the rape were separate and distinct crimes.

### 3.   rape and complicity counts

**{¶88}** Finally, Williams's rape count and complicity counts do not merge.   Count 2 was charged as a complicity offense.   Count 2 was committed separately from Williams's own rape

of T.B. — Williams's action of pointing the shotgun at T.B. so his accomplice could rape her was committed separately from T.B.'s own offense of rape. The complicity offense had a separate animus of providing his accomplice the ability to rape T.B., and created additional harm separate and apart from that of Williams himself raping T.B. Thus, Williams does not show that the two rape offenses should have merged.

{¶89} Accordingly, the sixth assignment of error is overruled.

**Juvenile Court — Tenth Assignment of Error**

{¶90} In the tenth assignment of error, Williams claims that the trial court erred in trying him as an adult without any bindover proceedings because he was only 17 years old at the time he was alleged to have committed the crimes. This argument has no merit.

{¶91} R.C. 2151.23(I) provides:

If a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion of the case charging the person with committing that act. In those circumstances, divisions (A) and (B) of section 2152.12 of the Revised Code do not apply regarding the act, and the case charging the person with committing the act shall be a criminal prosecution commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act. All proceedings pertaining to the act shall be within the jurisdiction of the court having jurisdiction of the offense, and that court has all the authority and duties in the case that it has in other criminal cases

in that court.

**{¶92}** Although Williams committed these crimes before his 18th birthday, because he was not apprehended until after he was 21 years old, the juvenile court lacked jurisdiction, and the case was properly tried in the common pleas court. *State v. West*, 8th Dist. Cuyahoga No. 95331, 2012-Ohio-3151, ¶ 36; *State v. Lindstrom*, 8th Dist. Cuyahoga No. 96653, 2011-Ohio-6755, ¶ 19.

**{¶93}** The tenth assignment of error is overruled.

**{¶94}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, P.J., and
MELODY J. STEWART, J., CONCUR